UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | |
|---|---|
| Benjamin Skapur and | Case No.: 10-58959 |
| Hasija Skapur, | Chapter 13 |
|     Debtors. | Hon. Walter Shapero |
| _____/ | |

## OPINION REGARDING DEBTORS' PROPOSED PLAN MODIFICATION

This matter is before the Court on the Debtors' proposed modification of their chapter 13 plan. Creditor RBS Citizens filed an objection. For the reasons set forth below, RBS Citizens' objection is sustained.

## BACKGROUND

The Debtors filed for Chapter 13 relief on June 10, 2010. RBS Citizens is the holder of a mortgage on the Debtors' property located at 3874 Belmont, Hamtramck, MI. The Debtors' plan proposed to pay RBS Citizens $15,000 plus 5.25% interest, for a total of $16,662.72 over the life of the plan. General unsecured creditors were projected to receive 2% of their allowed claims. RBS Citizens objected to the proposed treatment of its claim. The parties entered into a stipulation whereby the amount of RBS Citizens' secured claim was increased to $19,000 plus 2% interest, for a total of $20,070.89. RBS was also to receive 2% of the unsecured portion of its claim. The Order Confirming Chapter 13 Plan was entered on November 19, 2010.

On March 4, 2011, the Debtors filed their First Proposed Plan Modification, seeking to excuse remittance of their 2010 tax refund in the amount of $3,303 for needed vehicle repairs. The plan length was to remain 48 months and the dividend was to remain 2%. The Debtors provided an

estimate for the vehicle repairs in the amount of $6,724.22. There were no objections to the proposed modification.

On January 25, 2012, the Debtors filed their Second Proposed Chapter 13 Plan Modification. Under this modification, the Debtors indicated that the Debtor Husband, a truck driver, had been in an accident, resulting in the total loss of his truck and his being unable to work for 3 months. The Debtors proposed to increase their plan payments from $1,535 per month to $1,575 per month and sought to excuse the delinquency of $10,605. The plan length was to remain 48 months and the dividend was to remain 2%. There were no objections. The Debtors also filed Amended Schedules I and J, reflecting a decrease in average monthly income to $7,229.97. Their expenses were $5,564.67, resulting in a monthly net income of $1,575.30.

On June 12, 2012, the Debtors filed their Third Proposed Chapter 13 Plan Modification seeking to excuse remittance of their 2011 tax refund in the amount of $3,018 for needed vehicle repairs. The plan length was to remain 48 months and the dividend was to remain 2%. They provided an estimate for the repairs of $6,823.94. There were no objections.

On July 15, 2013, the Debtors filed their Fourth Proposed Chapter 13 Plan Modification seeking to excuse remittance of their 2012 tax refund in the amount of $3,674. Again, the Debtors indicated that the funds were needed for vehicle repairs. They provided an estimate in the amount of $4,810.02. The plan length was to remain 48 months and the dividend was to remain 2%. RBS Citizens filed an objection, arguing that the vehicle repairs should have been made with the 2011 tax refund. The parties resolved RBS Citizens' objection with the Debtors agreeing to 1) remit $250 of the 2012 tax refund to the Chapter 13 Trustee and 2) pay attorney fees of RBS Citizens in the amount of $350.

-2-

10-58959-mlo    Doc 183    Filed 01/05/16    Entered 01/05/16 13:07:39    Page 2 of 8

On July 9, 2014, the Debtors filed their Fifth Proposed Chapter 13 Plan Modification, seeking to extend the plan from 48 months to 60 months, decrease the monthly payments from $1,575 to $800 and excuse missed payments in the amount of $10,985. The dividend was to remain 2%. The Debtors also filed Amended Schedules I and J indicating monthly income of $4,486.70 and monthly expenses of $3,686.67. The resulting monthly net income was $800.03. There were no objections.

On June 15, 2015, the Debtors filed their Sixth Post Confirmation Plan Modification seeking to reduce the amount paid to unsecured creditors from 2% to 0% and to excuse the remittance of their 2014 tax refund in the amount of $4,447. RBS Citizens filed an objection. On October 5, 2015, the Court conducted a hearing on the matter and requested briefs from the parties.

### **PARTIES' ARGUMENTS**

RBS Citizens notes that nearly every year since plan confirmation, the Debtors have filed plan modifications to excuse remittance of their tax refunds. RBS Citizens questions whether the Debtors ever intended to comply with the plan and whether the Debtors have engaged in the necessary belt-tightening required during a chapter 13 plan.

RBS Citizens also contends that the Order Confirming Chapter 13 Plan is res judicata as to the amount to be paid to unsecured creditors because that issue was contested and resolved as part of the confirmation order.

RBS Citizens further contends that the Debtors' proposed modification is not in good faith because, according to the Debtors' amended schedules, filed July 9, 2014, they have a combined gross monthly income of $7,319.34. RBS Citizens asserts that while the Debtors contend that they need the 2014 tax refund for maintenance and repairs to their rental property, they have failed to

-3-

specify what repairs are needed. Therefore, RBS Citizens is unable to determine whether the repairs are reasonable and a benefit to the estate.

The Debtors argue that their household income has been significantly less than expected. The Debtors' Schedule I, filed June 14, 2010, projected gross income of $130,200 per year. This amount included $1,850 per month in rental income and $9,000 per month from the operation of the Debtor Husband's trucking business. However, the Debtors contend that their adjusted gross income has averaged less than $25,000 per year for 2010-2014. Despite this, the Debtors assert that they have been able to pay $64,180 over the life of the plan. The Debtors argue that their unexpected limited income is the reason they sought to modify their plan in past years and why they currently seek to modify their plan.

The Debtors contend that the funds they have spent to maintain their rental property have been necessary as that property is an important source of income for the Debtors.

The Debtors further assert that the proposed modification seeking to reduce the dividend to unsecured creditors is not barred by res judicata because such a modification is specifically allowed by § 1329(a)(1) and if the parties intended for the Debtors to be prohibited from modifying their plan, that language would have been included in the Order Confirming Plan.

## DISCUSSION

**I. Res Judicata:**

Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). "[C]onfirmation of a plan has been described 'as res judicata of all issues that could or should have

been litigated at the confirmation hearing.'" *Ruskin v. DaimlerChrysler Servs. N. Amer., L.L.C. (In re Adkins)*, 425 F.3d 296, 302 (6th Cir. 2005) (quoting *In re Cameron*, 274 B.R. 457, 460 (Bankr. N.D. Tex. 2002)).

Despite the binding effect of a confirmation order, a debtor, a trustee, or the holder of an allowed unsecured claim may, by specific statutory authority, move to modify a plan post-confirmation. 11 U.S.C. § 1329. The modification may be to increase or reduce the amount of payments on claims of a particular class provided for by the plan, to extend or reduce the time for such payments, or to alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of the claim other than under the plan. 11 U.S.C. § 1329(a)(1), (2) and (3). "[T]he Sixth Circuit Court of Appeals has addressed modifications under § 1329 on three separate occasions and in each instance has reiterated the necessity of only permitting modifications that strictly fall within the parameters of § 1329, due in part to the binding effect of confirmation under § 1327." *Storey v. Pees (In re Storey)*, 392 B.R. 266, 271 (B.A.P. 6th Cir. 2008). Res judicata does not apply when the plain language of a statute demonstrates that it should not apply. *In re Witkowski*, 16 F.3d 739, 745 (7th Cir. 1994). Section 1329(a) "gives the debtor, unsecured creditors and the trustee the right to modify a confirmed plan without any threshold requirement. As such, § 1329 and the entire Bankruptcy Code indicate a clear intention that res judicata does not apply to the limited modifications permitted for by § 1329." *In re Meeks*, 237 B.R. 856, 859 (Bankr. M.D. Fla. 1999). *See also In re Moore,* 247 B.R. 677, 682 (Bankr. W.D. Mich. 2000) ("A harmonious interpretation of Sections 1327(a) and 1329(a) requires not only that the res judicata provisions of Section 1327(a) be subject to the modification provisions

of Section 1329(a), but also that the modifications which are permitted under Section 1329(a) be limited to those which are expressly set forth in that section.").

RBS Citizens asserts that res judicata should apply here because it objected to the Debtors' proposed treatment of its claim and the confirmed plan was part of a negotiated settlement. However, there is simply no basis for such an exception to the modification provisions of § 1329(a). Particularly, as § 1327(a) provides for and applies even if the creditor "accepted" the plan, which can be said to be the case here. Therefore, RBS Citizens' objection to the Debtors' proposed modification on this ground is overruled.

## II. Good Faith:

Under § 1329(b)(1), the requirements of § 1325(a) apply to proposed modifications. Those requirements include a finding that the modification be proposed in good faith. 11 U.S.C. § 1325(a)(3). The Debtors bear the burden of proof on the issue of good faith. *See Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990). RBS Citizens argues that the Debtors have not acted in good faith because they have modified the plan five times already and their most recent Schedules I and J, filed July 9, 2014, show income much higher than what they now claim. RBS also contends that the Debtors have failed to specify what repairs are needed on their rental home.

In determining whether a plan has been proposed in good faith, courts in the Sixth Circuit examine the totality of the circumstances. *In re Okoreeh–Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988). The *Okoreeh–Baah* court explained:

> In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter

> 13: a sincerely-intended repayment of pre-petition debt consistent
> with the debtor's available resources.

*Id*.

The Debtors' proposed modification seeks to excuse remittance of the 2014 tax refund in the amount of $4,447 and reduce the dividend to Class 8 General Unsecured Creditors from 2% to 0%. The Debtors contend that the modifications are necessary because they have incurred necessary expenses related to home repairs for their rental property located at 3128/3130 Jacob, Hamtramck, and their income has consistently been lower than anticipated. The Court concludes that the Debtors have failed to establish that they are acting in good faith. The Debtors' proposed modification states that necessary home repairs for their rental property exceeded the amount of their 2014 federal tax refund, which was $4,447. However, they do not indicate the amount for the home repairs and have failed to provide any documentation in support, such as receipts for the alleged repairs. Further, there are discrepancies between the Debtors' last Amended Schedule I and what they now contend their income to be. The Debtors' Amended Schedule I, filed July 9, 2014, shows monthly income of $4,486.70. This amount includes $650 in rental income.[1] The Debtors now contend that their adjusted gross income has averaged only $2,044 per month for the years 2010-2014. However, the Debtors have not amended their Schedule I and have failed to explain the discrepancy.

In their brief, the Debtors contend that their request to reduce the dividend to unsecured creditors is a separate issue from their request to retain their income tax refund. Regardless, the

---

[1] It should be noted that the Debtors' Schedule J has always included the following expenses for the Jacob property: $150 for property taxes, $20 for maintenance, $90 for insurance, and $30 for water.

Debtors have not provided adequate support for either request. Accordingly, RBS Citizens' objection on good faith grounds is sustained and it shall present an appropriate order.

**Signed on January 05, 2016**

                                       **/s/ Walter Shapero**
                                   **Walter Shapero**
                                   **United States Bankruptcy Judge**